SAMUEL H. WILLARD, Respondent, *v.* HOLMES, BOOTH AND
HAYDENS, Appellant.

*It seems* that where a party has been subjected to some special or added
grievance, by an interference with his person or property in a civil
action, brought against him without probable cause, he may maintain an
action for malicious prosecution, to recover any legal damages so
sustained.

An action for malicious prosecution may, in a proper case, be maintained
against a corporation.

To sustain an action for malicious prosecution in prosecuting a former
civil action, the circumstances must appear to have been such that no
reasonable man could have been influenced thereby to the belief that
the former action was maintainable.

The question is, not what the actual facts were, but what defendant had
reasonable cause to believe they were when instituting the former action,
and if, as he so believed, they furnished reasonable cause, the failure of
the action is no evidence of want of probable cause or of malice.

Plaintiff was formerly the treasurer and general manager of defendant, a
corporation chartered for the purpose of manufacturing and selling cer-
tain metal goods; he was also a stockholder of a company engaged in
manufacturing carbons for electric lighting purposes. He executed a
contract on the part of defendant with the carbon company, under which
the latter was to sell all of its manufactures to defendant. The carbon
company, desiring to increase its facilities, made an arrangement with
plaintiff, who undertook to procure the means by lending the defendant's
credit. The capital of the carbon company was $25,000, and at this time
it was indebted to defendant over $22,000. To carry out this arrange-
ment the carbon company made its note payable to defendant's order,
which plaintiff indorsed in its name and procured to be discounted. To
take up this note the carbon company sent another note, payable to plain-
tiff, to A., an agent of the latter, who had authority to make and indorse
notes in its name, and who was also a stockholder of the carbon company;
this he indorsed and procured to be discounted and the proceeds were used
to take up the former note. Plaintiff having left defendant's service,
its president, in ignorance of the facts, and supposing the last note to be
the renewal of a customer's note, to take it up, indorsed and procured the
discount of another note, which defendant was obliged to pay. Said
president having ascertained the facts, consulted defendant's attorney,
and was advised by him that an action to recover damages was main-
tainable against plaintiff. The latter having refused to secure defend-
ant against loss, its directors directed the prosecution of such an action.
The action was brought and an attachment was issued therein. The
complaint was dismissed on trial on the ground that as there was no evi-

dence that any of the directors and stockholders of the plaintiff therein (the defendant here) were ignorant of the transactions with the carbon company, it was to be assumed they acquiesced therein. Upon the trial of this action for malicious prosecution it appeared that aside from the plaintiff and A., none of defendant's directors had any knowledge of said transactions until the facts were discovered by the president. *Held*, that as the burden of proving the want of probable cause rested upon plaintiff, this necessitated that he should show that defendant authorized and acquiesced in his mode of corporate management, and as not only had he failed in this, but the contrary was established, the action was not maintainable.

(Argued April 13, 1894; decided June 5, 1894.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city of New York, entered upon an order made February 7, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John E. Parsons* for appellant. Probable cause is defined to be a reasonable ground for a suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that a person accused is guilty of the offense with which he is charged. (*Anderson* v. *How*, 116 N. Y. 336; *Carroll* v. *Ayres*, 53 id. 114; *Foshay* v. *Ferguson*, 2 Den. 617; 125 N. Y. 79; *N. Y. C. Ins. Co.* v. *N. P. Ins. Co.*, 14 id. 85; *Bentley* v. *C. Ins. Co.*, 17 id. 421; *Claflin* v. *F. & C. Bank*, 25 id. 293; *Dutton* v. *Willner*, 52 id. 312; *Carman* v. *Beach*, 63 id. 97; *Wheeler* v. *Nesbitt*, 24 How. [U. S.] 544; *Heyne* v. *Blair*, 62 N. Y. 19.) The defendant was not required to make any further investigation to justify the commencement of the original action. (*Liston* v. *Perryman*, L. R. [4 H. L.] 521; *Brewer* v. *Jacobs*, 22 Fed. Rep. 217.) The question of probable cause does not depend upon what were in truth and fact the merits of the original action; nor does it depend upon the result of that

action. (*Fagan* v. *Knox*, 1 Abb. [N. C.] 248; *Stewart* v. *Sonneborn*, 98 U. S. 195; *Bacon* v. *Thorne*, 4 Cush. 217.) The defense of advice of counsel was made out. (*Stewart* v. *Sonneborn*, 98 U. S. 187; *Stone* v. *Swift*, 4 Pick. 389; *Ames* v. *Stearns*, 34 How. Pr. 289, 297; *Ravenga* v. *McIntosh*, 2 B. & C. 693; *Laird* v. *Taylor*, 66 Barb. 139, 143.) No malice was shown. (*Vanderbilt* v. *R. T. Co.*, 2 N. Y. 479; *Fisher* v. *M. E. R. Co.*, 34 Hun, 433; *Brooks* v. *N. Y. & G. L. Co.*, 30 id. 47; *Caldwell* v. *N. J. S. Co.*, 47 N. Y. 282; *Newman* v. *N. Y., L. E. & W. R. R. Co.*, 7 N. Y. Supp. 560.) The fact that an attachment was issued showed neither malice, nor did it bear upon the question of probable cause. If the defendant were justified in suing at all, it was justified in procuring an attachment. The defendant was a non-resident. (*Richardson* v. *Virtue*, 2 Hun, 208.) The case has so far been presented for the appellant upon the assumption that an action lies for the malicious prosecution, without probable cause, of a civil action, even where questions of law were alone or chiefly involved in the former action; and that the defendant is to be held under the same rule as would be applicable in case it had procured the plaintiff's arrest. But there is a wide difference between the two cases; and it is believed that there is no authority in the books for a recovery in a case like this, where the civil rights asserted by the defendant in the former suit depended upon the determination of questions of law. (Cooley on Torts, 189; Addison on Torts, § 863; *Q. H. Co.* v. *Eyre*, L. R. [11 Q. B. Div.] 674.) The plaintiff, against objection and exception, was permitted to testify that he had been requested to resign his treasurership of the Wessel Company, and that the president of the company had talked to him about the suit (the original action), and the injury it was doing the company, and that on account of that they would not care to retain him in his position as treasurer. This was hearsay. (*Kenyon* v. *People*, 26 N. Y. 203, 209; *Bullis* v. *Montgomery*, 50 id. 352, 358; *Tooley* v. *Bacon*, 70 id. 34; *McIlhargy* v. *Chambers*, 117 id. 532; *Hine* v. *M. R. Co.*, 132 id. 477; *Penfield*

v. *Carpender*, 13 Johns. 350; *Irvine* v. *Cook*, 15 id. 239; *Bristol* v. *Dann*, 12 Wend. 142.)

*Marshall P. Stafford* for respondent. The action complained of was malicious. (Cooley on Torts [2d ed.], 218 : 1 Wait's A. & D. 143, 342, 428.) A request to charge must be made in such terms that it can properly be charged without change or qualification. Otherwise it is not error to refuse it, even if it suggests or contains something that might properly be charged. (*Bagley* v. *Smith*, 10 N. Y. 499; *Carpenter* v. *Stillwell*, 11 id. 79; *Hodges* v. *Cooper*, 43 id. 216.)

GRAY, J. This action was brought to recover damages for the malicious prosecution of a civil action. Whether such an action may be maintained, regardless of whether the plaintiff in the former action had interfered with either the person or property of the defendant therein, is a question we are not called upon to determine. The general rule at common law that an ordinary action, maliciously brought and without probable cause, which had terminated in favor of the defendant, gave rise to a right of action, certainly seems to have disappeared in England with the enactment of statutes giving costs to successful defendants. (3 Blackst. Com. 126 [Chitty's notes]; *Quartz Hill, etc., Co.* v. *Eyre*, L. R. [11 Q. B. Div.] 674, 683.) In this country the authorities are not agreed upon the doctrine governing such actions; as may be seen by reference to the cases collated in the American and English Encyclop. of Law (vol. 14, p. 32). But I am prepared to assume that there may be satisfactory authority for holding that where a party has been subjected to some special, or added, grievance, as by an interference with his person, or property, in a civil action, brought without probable cause, he may maintain a subsequent action to recover any legal damage, which he avers, and is able to show, to have been occasioned to him. (See *Bump* v. *Betts*, 19 Wend. 421; *Whipple* v. *Fuller*, 11 Conn. 582; *Potts* v. *Imlay*, 4 N. J. L. 330; *Mayer* v. *Walter*, 64 Penn. St. 283, and Cooley on Torts, p. 187.) The action generally is not to

be viewed with any favor; for, in theory of law, the costs awarded by the statute to the successful defendant are an adequate compensation to him for all damages.   There is no reason, of course, why the action, in a proper case, should not be maintained against a corporation.   The motive for the corporate suit is imputable to the corporation and not to the individual directors.   In this case it appears that plaintiff's property was attached, in the former action against him, and if it has been shown that it was instituted without probable cause and that there was an abuse of the processes of the law in the procuring of the attachment, furnishing the ground for an inference of malicious interference, the action may be said to have been attended with a special grievance; which, by adding to the expenses some injury to property, differentiated it from an ordinary action.   The attachment issued upon the affidavit of the plaintiff's (this defendant's) president; alleging the non-residence of the defendant in the action.   It was a process which the statute authorized and which is usual in such cases, and its use subjects this defendant to no unfavorable criticism, if it accompanied the institution of an honest suit.   The complaint and the affidavit in the former action contain no charges of fraud, or of a defamatory character, and they, as well as an examination of the facts connected with its bringing and maintenance, seem to disclose only an effort to recover a sum of money, which the plaintiff's directors supposed to have been lost to the company, through the unauthorized act of the defendant, while its treasurer and managing officer.   Under such circumstances, every intendment should and will be against this plaintiff upon reviewing the case presented.   Such an action as the present one comes very near to being, if it is not actually, a re-trial of the former case, and, for its justification, requires the plaintiff to make out a very glaring case of the commencement of an action against him without any reasonable ground, at the time, for a belief that he had rendered himself liable thereto.   The circumstances to sustain this right of action must appear to have been such, that no reasonable man could

have been influenced thereby to the belief that the plaintiff had unauthorizedly committed the company, whose officer he had been, to a liability which it should not have incurred and which was foreign to its chartered purposes. It is our judgment that the facts did not justify the trial court in submitting the case to the jury and that, upon all the evidence, it was error to deny the defendant's motion to dismiss the complaint. The material facts were not in dispute and whether there was probable cause for the prosecution of the former action became a question of law, solely, for the court. (*Besson* v. *Southard*, 10 N. Y. 236.)

A review of the facts will make this clear and seems justified by the magnitude of the recovery at the Circuit and the subsequent affirmance of the judgment by the General Term.

In 1886 the plaintiff, Willard, was the treasurer and the general manager of the defendant, a Connecticut corporation styled Holmes, Booth and Haydens, which was chartered for the purpose of manufacturing and dealing in brass, copper and German-silver goods etc. etc. Willard had been intrusted by the directors with a management of the company's business, which was, practically, uncontrolled. He had executed a contract between the company and the Forest City Carbon Company, a corporation in Ohio, engaged in manufacturing carbons for electric lighting purposes; under which the latter company was to sell all of its manufactures to the Holmes etc. Company. The Carbon Company desired to increase its facilities and to extend its plant and, in July 1886, made an arrangement with Willard, who undertook to procure the means by lending his company's credit. It made its promissory note to the order of the Holmes Company for $10,000; which Willard indorsed in the name of the payee and procured to be discounted; remitting the proceeds to the Carbon Company. Before the maturity of this note, Willard resigned from the Holmes Company. In November 1886, the Carbon Company, being unable to meet its maturing note, sent on another note for $10,000, made to the order of the Holmes Company,

to Adams, then the agent of the latter company. Adams indorsed the note with the payee's name and procured its discount. The company's check for $10,000 was then sent to the Carbon Company; which that company used to take up its July note. During and prior to these transactions Willard and Adams were also interested, as stockholders, in the Carbon Company. After Willard left the service of the Holmes Company, Wayland, its president, succeeded him as treasurer and general manager, in the latter part of January, or early in February. Being made aware of the outstanding liability of the company as indorser upon the note, and being informed that the maker was unable to provide for its payment, he procured the discount of another note of the Carbon Company, for the same amount, at the bank and the proceeds being credited to the Holmes Company, the November note when due was charged to its account. At the time, Wayland was ignorant of the facts attending the making of the note, and supposed it related to the renewal of some customer's note. Upon investigation, he discovered the history of the matter and that, at the time when Willard, in July 1886, had agreed to lend the credit of the company in aid of the Carbon Company, in the manner mentioned, that company, with a capital of only $25,000, was already indebted to the Holmes Company in the sum of $22,338.47, and that a first note had been paid with funds furnished by his company. He at once consulted with the company's attorney and was advised that the company could recover damages against Willard, measured by the amount which the company had had to pay upon the note. A complaint was prepared and sworn to; which charged Willard with having indorsed the company's name upon the Carbon Company's note, without consideration received by the former company and without authority; with having remitted the proceeds of the discount thereof to the sole benefit and use of the Carbon Company and that the Holmes Company had been obliged to pay the same at maturity. Judgment was demanded against Willard for damages to the amount of the note. An affidavit was

also prepared and sworn to; which set forth the defendant Willard's non-residence; the cause of action and that the source of the information of Wayland, the deponent, was in an inspection of the books and records of the plaintiff company. Prior to the actual commencement of the action, however, Wayland had an interview with Willard; in consequence of which Willard consented to attend at a meeting of the directors of the Holmes Company, and he then explained to them the purpose of the note transaction in July 1886; namely, to enable the Carbon Company to supply them with carbons in larger quantities and he claimed to have acted legitimately. He was asked to secure the company against loss by assigning some of his securities; but he declined to do so and the directors, refusing to excuse him, advised Wayland to proceed with the action; which was at once done. When the action came on for trial, the complaint was dismissed and judgment ordered in favor of Willard; which was, eventually, affirmed in this court. (125 N. Y. 75.) We held that the dealings with the Carbon Company were *ultra vires* the Holmes Company; but, as there was no proof to the effect that any director, or stockholder, was ignorant of these business transactions with the Carbon Company, it must be assumed that they were acquiesced in and, hence, no action should be maintained against the managing officer, for any resulting damage. If the company was, in fact, carrying on an illegitimate business to the knowledge of the directors, the general manager had the same authority and discretion as he had in the legitimate business. The failure of the company in its suit against Willard was due to the necessary assumption that, in the absence of all proof to show a want of knowledge on the part of the directors and stockholders of the business, which Willard was conducting with the Carbon Company, they must have known of and acquiesced in it. Upon the trial of the present action, it appeared that of the directors of the Holmes Company only Willard, Adams and McGill were pecuniarily interested in the Carbon Company; and that beyond Willard and Adams none of the directors had any knowledge of these transactions with

the Carbon Company, until discovered by Wayland. Willard, by virtue of his position, and Adams, by virtue of express powers, conferred by resolution upon him as agent of the company, to indorse commercial paper and to sign checks in the company's business, were enabled to conduct these transactions with the Carbon Company and, being left practically, if not actually, without supervision by the other directors, they were not discovered until brought to Wayland's attention by the failure of the Carbon Company to meet its note in March 1887 and the resulting investigation into the books. Therefore, while it is possible that, despite the ignorance of the directors concerning the full extent of Willard's transactions with the Carbon Company, due to their official inaction and blind confidence in his and Adams' management of affairs, the company itself might have been precluded from maintaining an action against Willard to recover any damages, the question was mainly one of law, and a mistaken belief as to his liability to the company, upon the supposed facts, should not have exposed the company to a suit for malicious prosecution. The burden in this action was upon the plaintiff to prove a want of probable cause for the institution of the legal proceedings against him and that necessitated that he should show that the directors had authorized and acquiesced in his methods of corporate management. He not only did not do this; but precisely the contrary was established as the truth. In the opinion of the learned General Term judges, it was deemed conclusively established that Willard had been prosecuted without probable cause; "since," to quote from it, "it would imply stultification by defendant to urge that it did not know what authority it had given plaintiff," and that knowledge of the fact was chargeable to it, because of Willard's explanation, made upon the occasion of his meeting with the directors, at the instance of President Wayland. The difficulty with the view of the General Term is that it fails to appreciate that, whatever the knowledge attributable to the corporation as matter of law, in this action Willard utterly failed to prove, as he was bound to do, that, in fact, the disin-

terested directors and stockholders ever either authorized, or knowingly acquiesced in, these transactions of his. This was necessary to be shown, in order to prove that the company's suit should never have been brought, when its directors became cognizant of the transactions complained of. The proof was that Willard never was authorized to make advances to the Carbon Company and that he made them without the knowledge of the directors; other than Adams, who was interested with him in the matter. Willard was protected against liability to his company, for the reasons stated in our former opinion; (125 N. Y. at p. 81) which applied to his case an exception to that rule which prohibits corporations from engaging in transactions *ultra vires* and subjects corporate officers, committing them to such, to a liability to respond in damages. For the respondent, Willard, it is argued that the former action had no reasonable cause; for the reason that its allegations of an unauthorized indorsement, made without consideration to the company, and of the payment by the company of the indorsed notes and of the consequent loss were all false. They were not. The indorsement was made without authority expressly given; and the fact that the company failed in its action against its officer does not affect the question, for reasons already stated. That the indorsement was made to extend the facilities of the Carbon Company, in supplying goods under its contract, may have been perfectly true; but the contract between the companies did not call for advances of money and whether there was any consideration moving to the Holmes Company was questionable. That may have been Willard's opinion; but it was open to the directors to question and deny the existence of any consideration. The note in question in the other action was, in fact, paid by the Holmes Company, its indorser. It was only in form paid by the Carbon Company, its maker; for, before it became due, the check of the Holmes Company was forwarded and furnished the means wherewith the former company took it up. That the moneys proceeded from the discount of a new note of the Carbon Company does not alter the matter. It was the fact,

too, that, in the end, the $10,000 advanced to that company were not repaid and the Holmes Company had to take up the renewal notes from the bank. Except in the fact that the plaintiff in the former action mistook the law of the case and did not anticipate the decision of the courts, upon the question of the defendant's legal liability, there was no ground for alleging that its action was without probable cause. Upon that question, of whether a cause of action existed, the company had the advice of respectable counsel, and the directors authorized the suit; relying upon it and in good faith believing the facts to warrant them in holding Willard in damages. It may be observed in this connection, as evidencing their consideration for Willard, that though the president was advised by counsel that the company might proceed against Willard upon the ground of fraud, for a misappropriation of funds, and would be entitled to arrest him, he refused to take a proceeding, which might oppress and disgrace him. The advice of counsel was given with all the facts known to the president; except that it is said the exact mode in which the note was paid by the company, and the explanations of Willard as to the transactions, were not communicated. The respondent's counsel, in his brief upon the evidence, asserts that the attorneys "were perfectly well aware of the true state of facts." But, assuming any doubt in that respect, as to the attorneys' knowledge of all the circumstances, it does not alter this case. The note was paid from the company's funds and Willard's explanation to the directors, while it evidenced his belief that he had been acting in the interests of the company, did not alter the question of his lack of actual authority. The mistake of the attorneys was upon the legal questions.

Without going further into the evidence, we think the plaintiff failed to show that this defendant was without reasonable grounds for the belief that he was liable in damages. There was reasonable ground, in the discovery by the directors of the facts connected with Willard's transactions, upon which to found a genuine belief that a cause of action existed against him and, with the advice of counsel, there was justification for their

proceeding ; in the facts, if not in the law.   They were bound
to predicate their action upon facts, real, or honestly supposed ;
but they were not to come under legal condemnation, for not
having anticipated the legal conclusion of the court from the
facts as proved.   In this, as in every such case, the question is
not what the actual facts were upon which the action was taken ;
but what the defendant had reason to believe they were, and if
they furnished reasonable cause for instituting the proceeding
complained of, its failure is no evidence of want of probable cause
or of malice.   (*Stewart* v. *Sonneborn*, 98 U. S. 187 ; *Fagnan*
v. *Knox*, 66 N. Y. 525 ; *James* v. *Phelps*, 11 Ad. & El. 483.)
Judge COOLEY, in his work on Torts (p. 181), after referring
to definitions of what constitutes probable cause, says " there
must be such grounds of belief as would influence the mind
of a reasonable person " under like circumstances.   " The
complainant," he says, " cannot be required to act with the
same impartiality and absence of prejudice, in drawing his
conclusions as to the guilt of the accused, that a person entirely
disinterested would deliberately do."   In *Lindsay* v. *Larned*
(17 Mass. 190), it was complained that an action had been
commenced to recover upon some promissory notes and the
person of the plaintiff had been arrested and his property
attached in the province of East Florida ; when, at the time, a
judgment had been recovered in a suit brought in Massa-
chusetts upon the same notes, wherein an attachment had also
issued, and that, because of the action so pending, the Florida
suit was dismissed.   A non-suit at the Circuit was upheld
and in the opinion of the court language was used, which
may, not inappropriately, be referred to in connection with
this case.   Judge PUTNAM said, referring to the defendant's
action : "Anxious to recover a considerable debt, he took those
measures, and those only, which, under the best advice, he
supposed adapted to that purpose, without any apparent desire
to harass or vex his debtor.   Undoubtedly the present plain-
tiff has sustained considerable loss, in consequence of the suits
which the defendant instituted.   But it must not be forgotten,
in this part of the case, that the defendant has never to this

day obtained payment of his debt notwithstanding all his exer-·
tions.    The misfortunes of the plaintiff have arisen from his
pecuniary embarrassments, and. not from any abuse of the
processes of law, to which the defendant had recourse." ·
Although it may be without legal bearing upon the discussion
of the question, whether the evidence showed such a want of
probable cause as to warrant the submission of the case to the
jury upon the question of malice, it is not altogether out
of place to observe that this record contains no outward evi-
dence of the existence of malice ·in the prosecution of the.
former action.    The issue of the attachment was with the
purpose of securing the payment of a claim, which the com-
pany was supposed to have against the defendant therein; a
perfectly legitimate use of a statutory process.    Nor should
the court be influenced, in determining the question of the
defendant's liability to such an action as this, by a considera-
tion of any subsequent statements by its officers, which may
have reflected discreditably upon Willard's character or
capacity.    They may have furnished material for individual
suits; but could not help out the cause of action here; which
turned solely upon the existence of probable cause for
instituting the former suit. _ It may be further observed that,
as matter of fact, the favorable result to this plaintiff in the
former action might have been regarded by him as a vindica-
tion of his fair fame.    Whatever reasons the directors had for
the allegations in the complaint against him, in a state of facts
which might reasonably operate upon the minds of men of
ordinary prudence, the action went against the company and
judgment was awarded to this plaintiff upon the issues.    He
was without justification, in instituting the present action to
recover damages for the prosecution by the company of its
action, and in re-opening a litigation, which had terminated
successfully for him.    The result has been to fail in making
out any cause of action and to enable the defendant to estab-
lish the existence of probable cause for the maintenance of
its action against him to recover the amount of the note for
$10,000 ; upon which he had indorsed the company's name,

in a matter not within the scope of its legitimate business, and which, now, appears not to have been authorized, or known to the disinterested directors.

The judgment appealed from should be reversed and a new trial ordered: with costs to abide the event.

All concur.

Judgment reversed.