FREER v. SCHMITT.

(Supreme Court, Appellate Division, First Department.　December 14, 1906.)

1. MALICIOUS PROSECUTION—EVIDENCE—SUFFICIENCY.
　　In an action for malicious prosecution, evidence examined, and *held* to sustain a finding that plaintiff had failed to prove a lack of probable cause.

2. SAME—TRIAL—QUESTIONS FOR JURY.
　　In malicious prosecution, the question whether plaintiff has succeeded in establishing a want of probable cause is a question of law.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Malicious Prosecution, §§ 161, 162.]

Appeal from Special Term.

Action by Robert R. Freer against Louis Schmitt.　From a judgment dismissing the complaint, and from an order denying a new trial, plaintiff appeals.　Affirmed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, HOUGHTON, and SCOTT, JJ.

Franklin Pierce, for appellant.
Robert Thorne, for respondent.

INGRAHAM, J.　The action was for malicious prosecution.　The defendant, at the end of the plaintiff's case, moved to dismiss the complaint, which motion was granted upon the ground that the plaintiff had failed to prove a lack of probable cause, and from the judgment entered upon that dismissal the plaintiff appeals.

The complaint alleged—and the answer admitted—that the defendant charged the plaintiff, before a magistrate of the city of New York, with the crime of grand larceny.　As appears from the testimony of the plaintiff, the facts within the knowledge of the defendant, upon which this charge was made, were as follows:　The defendant first entered the employ of the Schmitt Bros., of which the defendant was a partner, on June 3, 1888, and remained in their employ until April 1, 1900.　Schmitt Bros. and the Tiffany Glass & Decorating Company were then consolidated under the name of the Allied Arts Company.　The plaintiff was not employed by the new company, but subsequently, on December 15, 1900, at the request of the defendant, who was the treasurer of the Allied Arts Company, he went into its employ as bookkeeper.　At that time one Alexander was cashier.　Plaintiff continued in this position until September, 1901, when the cashier left and the plaintiff was given charge of the office as cashier and office manager, continuing to keep the books.　After Alexander left it was discovered that the books were out of balance, and the plaintiff then made a request of the defendant for a new set of books.　Plaintiff testified that defendant said that he had engaged an accountant to go over the books; that he knew that they were irregular, but he did not care to incur the expense of a new set of books; but subsequently he admitted on cross-examination that in December he made a design for new books, which were ordered on December 11, 1901, and those new books were used after the

1st of January, 1902. The plaintiff continued in the employ of the Allied Arts Company until May 17, 1902, when he left their employ.

During this period, from September, 1901, to May, 1902, the plaintiff, as cashier of the Allied Arts Company, had charge of the cash belonging to the company, made the necessary cash disbursements in carrying on its business, and kept the books showing these disbursements. The company employed various foremen to superintend the work that it was doing, and it advanced money to the foremen to be used in paying the necessary expenses, these advances being made by the plaintiff as cashier, and the charges to be made were entered in the books of the company by the plaintiff. The various foremen to whom these advances were made would at the end of each week return slips to the plaintiff showing the amount of money that each foreman had received and the disbursements that he had made on behalf of the company, and showing what amount, if any, of the company's money he had in his possession at the time of making the report, or in case his disbursements had been in excess of his receipts, showing the amount that there was due to him from the company. On March 6, 1902, one Donohue, one of the company's foremen, submitted to the plaintiff a slip showing that at the commencement of that week there was cash due to Donohue $41.51, and that during that week he had expended $100.08, making a total amount due to Donohue of $141.59, which had been marked "O. K." by defendant to show that the various disbursements made by the foreman was a proper charge against the company. Plaintiff entered this amount in the cash book as a disbursement. In the week ending March 13, 1902, Donohue presented to the company another slip which showed two sums of cash received during that week, one March 7, $100, and one March 13, $150, making a total of $250. Under the head of expenses there was stated, "Cash due me, $141.59," being the amount due to him from the previous week, as shown from the previous slip submitted on March 6, 1902, and various other disbursements during that week, aggregating $245.57, leaving a balance on hand of $4.43. This was also O. K.'d by the defendant and received by the plaintiff, who on March 13th entered in the cash book as expenses incurred by Donohue during the week ending March 13th the sum of $245.57, thus charging the company with the sum of $100.08 twice as cash disbursed by Donohue for account of the company. It was conceded that Donohue did not receive this sum of $100.-08 twice, and thus, to make the cash book balance, it would appear that some one other than Donohue must have received from the cash in the plaintiff's charge this sum of $100.08.

The plaintiff admits that he was primarily responsible for all cash payments made in the office to Donohue and to the other foremen. The entry of this amount in the book of the company was not discovered at the time the plaintiff left the company on May 17, 1902. At that time he went over his accounts, and counted up the cash in his possession, made out a statement, and submitted that statement to one Thomas, who apparently succeeded him as cashier. Thomas counted the cash and signed a paper stating that the amount was correct. According to this paper it appeared that the plaintiff had a certain amount

of cash on hand in the office and that his books called for the same amount of cash, and he then turned over the books, the keys, and the cash to Thomas, squaring the whole matter between the plaintiff and the company at that time as shown by the books and the cash in the drawer; and yet at that time (March 17th) the cash book contained these duplicate entries.    This statement was admitted in evidence.    It contained a footing of the debit side of the cash book of $75,885.93; on the credit side of the cash book of $60,383.21; bank balance, $13,-282.94; petty cash on hand, $346.87—which was turned over by the plaintiff to Thomas; the balance being money in the hands of workmen and salesmen on the road, and other small items which made the balance correct.

It would appear that without this duplicate charge the cash book should have shown an additional sum on hand of $100.08, and that amount should have been in the petty cash in the office, which was in the possession of the plaintiff.    These facts are admitted by the plaintiff upon his examination and cross-examination.    He offers no explanation as to this condition or as to what had become of this sum of $100.-08.    It also appeared from the plaintiff's examination that in the fall of 1901 there was a question raised about a sum of money which had been received by the plaintiff in connection with the purchases by a Dr. Morgan.    There was produced a slip in the plaintiff's handwriting, dated October 3, 1901, with an entry in pencil:

R. F. Check ....................................................... 36 00
Cash............................................................. 21 50
                                                                 _____
   Total........................................................ 57 50

This meant that certain articles had been purchased in the store by Dr. Morgan, and then had come to the plaintiff in payment of such purchase a check for $36 and cash $21.50.    A month or more after this a bill was rendered to Dr. Morgan for this amount, which was returned by him with a statement that he had paid it, and when this was shown to the plaintiff by Schmitt he admitted that he had received the $21 in cash and there was no entry of the $21 in the cash book; that, when Schmitt asked the plaintiff about it, the plaintiff said that somebody must have come and taken it off his desk; that he did not know anything about it; that the money had been placed on the plaintiff's desk and the check had been placed in the safe and the money had disappeared; that Schmitt then told the plaintiff that the company could better afford to lose it than he, and nothing more was said about it. The plaintiff testified that he had the sole responsibility for the cash drawer, so that it was distinctly incumbent upon him as bookkeeper and cashier to account for the moneys; that his cash book started with a balance on the 1st of January, 1902; that he actually had that money, and when he turned over the cash to the company on May 17, 1902, when he left their employ, it would appear that his cash was short at least this $100.08.    These facts were known to the defendant at the time that he made the charge against the plaintiff of taking this sum of $100.08; and these facts are to-day undisputed by the plaintiff and he offers no explanation of how, from the 1st of January, when he com-

menced the new cash book, which showed a sum of cash on hand, that cash could have been decreased by this sum of $100.08.

The question presented to the trial court was whether, upon these facts, known to the defendant, he had probable cause to charge the plaintiff with having taken that sum of $100.08 from the cash of the company which was in the possession of the plaintiff. As the plaintiff was the only witness examined, and these facts appeared by his testimony, the question of whether or not the defendant had probable cause to charge the plaintiff with the crime with which he was charged was a question of law for the court. There was nothing to submit to the jury, as there was no disputed fact; the plaintiff's statement being taken as proved. The principle that whether the plaintiff has succeeded in establishing a want of probable cause is a question of law is firmly established. In Rawson v. Leggett, 184 N. Y. 504, 77 N. E. 662, the Court of Appeals, in holding that the plaintiff had failed to prove a lack of probable cause, said:

"The question is not whether the plaintiff's evidence now given that he did not commit the crime charged to him is true. The propriety of defendant's conduct in causing him to be indicted is to be decided by the facts as they appeared to be at the time the prosecution was instituted, and the question is whether these facts as they then appeared were such that a discreet and prudent person would have been led to the belief that the accused had committed the crime with which he was charged. If defendants had knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that they had lawful grounds for prosecuting the plaintiff in the manner complained of, then probable cause was present, and this action will not lie. * * * Public policy requires that all persons should feel secure in the right to resort to courts for the apprehension and punishment of crimes, and this policy must be preserved and encouraged, even though it result in occasional hardship to the individual, provided only that the prosecution has been free from malice and has been warranted by such facts, actual and apparent, as would lead a person of reasonable care and prudence to undertake it. It is also well settled that, where the facts are undisputed, the question of the existence of probable cause is one of law for the court, rather than of fact for the jury."

In Burt v. Smith, 181 N. Y. 6, 73 N. E. 496, it is said:

"Probable cause does not necessarily depend upon the actual guilt of the person prosecuted, but may rest upon the prosecutor's belief in his guilt when based on reasonable grounds. One may act upon what appears to be true, even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable. If probable cause exists, it is an absolute protection against an action for malicious prosecution, even when express malice is proved."

On undisputed facts, probable cause is a question of law. Willard v. Holmes, Booth & Hayden, 142 N. Y. 492, 37 N. E. 480. Applying this rule, it seems to me that not only did the plaintiff fail to prove a want of probable cause, but the facts disclosed showed that there was probable cause to believe that this plaintiff had abstracted this $100.08 from the cash in his hands and that the defendant was justified in making that charge. The plaintiff had the cash and was responsible for it. He kept the books and was responsible for them and their correctness. If this duplicated charge had not been made, his cash would have shown $100.08 more than it did show, and he would have had that amount on hand. He balanced the books when he left the employ of the defend-

ant, and turned over the amount that appeared by the cash book as the amount of cash for which he was responsible. The irregularity in the books prior to the time that the plaintiff took charge of them is no explanation, as he testifies that when he commenced the cash book on the 1st of January he had on hand the cash therein shown. Upon these conceded facts, we think the court below was clearly right in holding that the defendant had probable cause to charge the plaintiff with abstracting this amount, and for that reason the complaint was properly dismissed.

The judgment and order appealed from should be affirmed, with costs. All concur.