**IRVING TRUST COMPANY and Ernest Crawford May, as Executors of the Will of Charles H. Hastings, deceased, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 199, Docket 23349.**

United States Court of Appeals, Second Circuit.

Argued March 8, 1955.

Decided April 5, 1955.

---

**2.** Ex Parte Milligan, 4 Wall. 2, at pages 119, 120, 18 L.Ed. 281.

Cardozo & Cardozo, New York City (Eli J. Blair, Benjamin M. Cardozo and Lewis B. Greenbaum, New York City, of counsel), for plaintiffs-appellants.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City (Thomas C. Burke, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before MEDINA and HINCKS, Circuit Judges, and BURKE, District Judge.

MEDINA, Circuit Judge.

This is an appeal by the executors of the estate of Charles H. Hastings from an order granting defendant's cross-motion for summary judgment in an action to recover federal estate taxes paid under protest. D.C., 129 F.Supp. 303.

The decedent died on February 21, 1942 and certain heirs at law, next of kin and distributees filed objections to the probate of the will which, after setting up a few annuities and a gift of $5,000 to a friend, left the bulk of the estate for the charitable purpose of founding and maintaining a sanitarium for the study, prevention, treatment and cure of tuberculosis. As so often seems to be the case there was little to support the claims of lack of testamentary capacity and defective execution of the will; but the delay and expense incidental to a trial of the issues raised by the objections and the possibility of a domiciliary dispute and the payment of taxes both in New York and California provided a powerful incentive to the making of some compromise. The estate was a large one, of about $4,000,000 at the time of the death of the testator, and it was difficult to find some basis on which to negotiate. A solution to this phychological problem was found, however, in an agreement made by the testator on September 13, 1914, by the terms of which Clinton M. Ostrander, Reba Cargill Stanley, Ida A. Cargill and Mabel Townsend Switzer, the residuary legatees under the will of the testator's sister, Lizzie Hastings Holme, agreed that the testator should share equally with them in the Holme residuary estate, although he had not been named as such in the will. The amount thus received by the testator was $130,732.61, a sum close enough to what the executors were willing to pay to compromise the will contest to serve

as a point of departure in the settlement discussions. One of these residuary legatees under the Holme will was Ida A. Cargill, a 95-year old cousin of the half blood and she appears to have been disappointed that the testator did not make provision in his will for certain needy relatives, at least in the amount he had thus received from the estate of his sister; and there was also some proof that she was piqued because no list of relatives had been left by the decedent with his attorneys. This dissatisfaction, which doubtless furnished part of the motivation for the will contest, is continually referred to in appellants' argument as a "claim," which was supposedly disposed of by the compromise agreement which we are about to describe.

The compromise or settlement agreement, dated November 12, 1942, while containing lengthy and elaborate provisions for court approval and the identification of the various heirs and next of kin who were to share in the monies to be paid over, was the ordinary form of agreement made in such cases and the nub of it was that the objections to probate were withdrawn and those established as the heirs at law, next of kin or distributees of the testator were to be paid the sum of $182,500. The agreement also provided that all federal and state "estate taxes, if any, required to be paid by reason of the payment of said sum of $182,500 * * * shall be paid out of the estate of said testator," and that the payment to the various persons named was to be "in full satisfaction and discharge of all claims which the Contestants or any of them or any other party hereto may have or claim to have in, to, against or in respect of the estate of said testator."

The compromise was approved by the Surrogate's Court of New York County, and the will admitted to probate on December 15, 1942. On February 1, 1943, the sums mentioned in the agreement were paid by the executors.

Despite the fact that both sides moved for summary judgment, there being no dispute about the underlying facts, appellants make much of the circumstance that the pretrial order formulated as an issue to be tried, "What was the probability that the will contestants would succeed in establishing their objections to the probate of decedent's will dated January 23, 1939?" But this did not preclude the court from later deciding that no trial whatever was necessary and that summary judgment should be granted. The functions of the Pretrial Conference described in Rule 16 and the Summary Judgment motion provided in Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., are entirely different. They complement one another; each serves its own special purpose. Upon a proper showing that there is no genuine issue to be tried, a judge may grant a motion for summary judgment wholly irrespective of the terms of a pretrial order specifying a number of issues which remained after the discussion at the Pretrial Conference had eliminated others. It is the purpose of the Pretrial Conference to simplify the issues, shape up the testimonial and documentary evidence and generally clear the decks for the trial. The function of the summary judgment motion, on the other hand, is to sift the proofs pro and con as submitted in the various affidavits and exhibits attached thereto, so that a determination may be made, without the expense and delay of a trial, that there are or are not real, as distinct from mere fictitious or paper issues, which must be disposed of in the traditional manner by trial to the court or jury. Thus here the court below correctly passed over the supposed issue as to the Ida A. Cargill "claim" as having no substance whatever. There was no such "claim," nor was the compromise agreement based upon any payment in settlement of any such "claim." The money was paid for the withdrawal of the objections to probate of the will, the release of all claims by every one concerned was no more than a necessary and usual incident to such a transaction. What gave this the appearance of an issue was the undoubted fact that the transaction of

September 13, 1914, coupled with the failure of decedent to make provision for his needy relatives, provided the motive for the contest and the formula which led to the settlement. The so-called issue about the Ida A. Cargill "claim" was pure sham; and the very function of the summary judgment motion is to eliminate sham issues.

■ On the law the case is governed by our decision in Thompson's Estate v. Commissioner, 2 Cir., 1941, 123 F.2d 816, which cites with approval In re Sage's Estate (Sage v. Commissioner), 1941, 122 F.2d 480, 484, where the Third Circuit cut down to the quick of the problem presented by these will contest settlement cases by holding that the amount received by the charity, to be devoted to charitable uses, must "measure the quantum of the deduction allowable."

■ The attempt to bring this case within the rule of Helvering v. Safe Deposit & Trust Co., 1942, 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266, collapsed when the true nature of the so-called Ida A. Cargill "claim" became apparent. To have directed a trial to proceed for the purpose of deciding the amount of the $182,500 which "can fairly be allocated" to the settlement of this supposed "claim" would have been a waste of time and expense for all concerned, as the entire amount was paid to settle the will contest. Moreover, even had there been substance to the "claim," we think no deduction should have been allowed, except in such amount as was received by the charity to be devoted to charitable uses. The Helevering case did not involve a charitable deduction; and the facts found to justify the direction in that case for a separate allocation differ radically from those before us here, as the settlement money there was paid in part for the withdrawal of a substantial assertion of property rights arising out of powers of appointment set up in wills of entirely different decedents, which it was claimed fell in for failure of a proper exercise of the powers.

Affirmed.