Edwin K. ATWOOD, Alice B. Atwood,
Ruth P. Fisher & Thomas H.
Fisher, Plaintiffs,

v.

Gilbert KERLIN, Defendant.

United States District Court
S. D. New York.

May 13, 1957.

**136**

Bokat & Bokat, New York City, Edmund W. Bokat, New York City, of New York City, for defendant.

Macilburne Van Voorhies, New York City, for defendant.

RYAN, District Judge.

Following adjudication by the Texas court of plaintiffs' and defendant's respective rights to certain lands located in that state, defendant was ordered by this court to file his account in accordance with the judgment, in Texas. This was done on May 1956 and objections were filed by plaintiffs as was a supplemental complaint adding two counts to the original complaint pending here. Nothing further was done until September 1956 when defendant brought on the present motions for an order (a) settling his account and dismissing plaintiffs' objections and directing entry of judgment for plaintiffs in the amount accounted for, and (b) dismissing the supplemental complaint and entering judgment for defendant. Before decision of these motions plaintiffs moved for an order (a) requiring defendant to pay certain costs and attorney's fees incurred by plaintiffs in connection with the motions (Fed. Rules Civ.Proc. rule 56(g), 28 U.S.C.A., (b) for leave to file an amended supplemental complaint adding two more counts to the supplemental complaint and requiring defendant to answer; (c) for leave to inspect and copy documents in defendant's possession (rule 34); and (d) for leave to file certain affidavits (rule 56(c, e)).

I deny plaintiffs' motion under Rule 56(g) as being obviously without merit; that under 56(c, e), is granted and all the papers submitted are considered; motion under Rule 34 is denied in view of the ultimate disposition of the motion for leave to amend the complaint which is denied.

The objections to the accounting originally filed were numerous but they have now been reduced to 3 items—totaling $31,960.37—and alleging failure to account: (1) for $1,000 delay rental for the year 1953–54 under the Stanolind Oil & Gas Lease; (2) for $15,854.55 delay rental under the Stanolind and Magnolia Oil & Gas Leases; and (3) for failure to pay over $15,105.82 bonus and delay rentals under both leases for the years 1950–55 as shown in the account.

Before determining the merit of these objections and of the claims pleaded in the supplemental complaint and the proposed amendment, it is necessary that I go back to the filing of the original complaint in January, 1951, and the events which preceded it. This suit has been before me on several occasions (opinions—4/17/51, 12/11/51, 10/2/51 (mem.) reviewed on appeal 11/26/51, 1/22/51 (C.A. 2, no opinions just memoranda decisions).

Sometime in 1950 a dispute arose between the parties as to the effect of a quitclaim deed executed by plaintiffs to defendant on March 19, 1945, conveying land known as the King 6,000 acre tract.

It was contended by plaintiffs that defendant took plaintiffs' share in the property in trust for the prosecuting of a claim to a condemnation award and that defendant was required to account for the land or its value. It was defendant's position that title was completely vested in him, as a result of the reconveyance by the Government in lieu of an award, and that he was to account only in the event that he sold the property—which he had not done. In order to resolve this difficulty plaintiffs in January, 1951 instituted the present suit in this court seeking in the first count a termination of the trust created by the 1945 instrument and praying for an order settling defendant's account; and in the second count seeking to restrain defendant from adjudicating the issue of title in any other court; and in the third count seeking to compel defendant to file a current account in the event the trust was not declared terminated. Immediately thereafter defendant as plaintiff filed an action in trespass to try title in the District Court of Cameron County, 103rd Judicial District of Texas—Kerlin v. Fisher et al. Cause No. 28491—against these plaintiffs seeking an adjudication of their respective rights in this land situated there. Plaintiffs then moved in this court for partial summary judgment under their complaint requiring defendant to account, terminating the trust and asking for an injunction to restrain the prosecution of the Texas suit. This motion was denied in a memorandum opinion of April 17, 1951 and I then stated that the Texas suit appeared to be "a thoroughly appropriate vehicle to adjudicate the question of title to and ownership of" the lands in question. In the Texas suit plaintiffs filed a cross-claim alleging that the King tract by reason of an award and settlement had increased to 16,200 acres and seeking to recover an undivided one-half interest in it. On May 3, 1954, the district court of Cameron County filed its decision sustaining defendant's title to the tract by conveyance from the Government and holding that plaintiffs reserved merely a vendors' lien which entitled them to one-half of any money received by defendant in the event of sale of the south 2,000 acres of the tract and a 1/16 royalty and 1/2 of all rentals under leases on the property; it non-suited plaintiffs in their cross-claim. On appeal by plaintiffs the Court of Civil Appeals, 4th Supreme Judicial District of Texas, on May 4, 1955 (Fisher v. Kerlin, Tex.Civ.App., 279 S.W.2d 637) reversed the trial court to the extent that it held defendant to be a constructive trustee of the 6,000 acre tract, that plaintiffs had title to "an undivided 1,000 acres out of the south 2,000 acres of the 'King 6,000 acre tract'; and an undivided 550.2 acres out of 3,300.11 acres undivided out of a larger tract of 6,600.22 acres lying north of said 'King 6,000 acre tract' ", (this represented plaintiffs' share in the excess lands received by defendant on the settlement over the condemnation), "together with a 1/16 royalty and one-half of the bonuses and rentals paid on the south 2,000 acres of the 'King 6,000 acre tract' and one-half of the bonuses and rentals out of 1,100.5 acres out of the 6,600.22 acre tract lying north of said 'King 6,000 acre tract';" and affirmed so much of the judgment as was not in conflict with its opinion.

The final judgment of the trial court of May 3, 1954, the "corrected judgment" of the Court of Civil Appeals of December 7, 1955 and the mandate of that Court filed on December 12, 1955, constitute the final judgment and certified copies have been filed on this motion.

Relying on the judgment of the Texas court plaintiffs in February 1956 moved this court for partial summary judgment under Count one of their complaint; I granted this to the extent of directing defendant to file his account and plaintiffs their objections and directed deposit by plaintiffs with the court of all checks received on account by them from defendant. On May 11, 1956, the supplemental complaint was filed without opposition.

It is now conceded by plaintiffs that the original complaint has become moot

by the judgment of the Texas court; it is their position however that the supplemental complaint and the amendment should be allowed, because the findings of that court and the objections to the account reveal breaches of trust by defendant for which he should be surcharged, by way of paying counsel fees, litigation expenses and interest on the money admittedly and allegedly due under the account.

■ I take up first the objections to the account. These may be disposed of without a hearing as they can be determined only by reference to the documents and exhibits submitted, none of which are in dispute.

The alleged failure of defendant to account for $1,000 delay rental is predicated on plaintiffs' contention that under the Stanolind Lease (Ex. 4) defendant was required to collect from the lessee a $1 per acre delay rental on July 25th of each year unless prior thereto the lessee released the property. A release to 6,000 acres was executed by Stanolind on July 21, 1953 (Ex. 5) but it is argued that this was void because it was not recorded with the Clerk of Cameron County until July 30, 1953—and that therefore defendant breached his trust by failing to collect this money from Stanolind. A reading of paragraph 4 of the lease reveals the frivolity of this objection. It is there provided that the lessee may at any time be relieved of his obligation to pay this delay rental by executing and delivering to the lessor or placing of record the release to any portion of the property thereby surrendering the lease as to such property. Nowhere is there a requirement that recording be had by a fixed date; on the contrary the time limitation is to the effect that unless the lessee pay the delay rental by a time certain the lease as to this portion shall terminate. Even assuming the lessee had a positive obligation to affirmatively terminate or continue liable it is difficult to conceive what more it could have done: it sent a telegram on July 23 to the defendant terminating the lease (Ex. 10); it filed

the release on July 30 and it did not pay the rental by July 25. This was certainly conclusive surrender of the lease.

The next objection is based on a statement made by the defendant in paragraph of his moving affidavit, to wit, that since the filing of his account on May 1, 1956, he had received on June 22, 1956, under the Stanolind lease a delay rental of $1 per acre and that "plaintiffs are entitled to receive $7,244.22 thereof"; and that on July 23, 1956, he had received under the Magnolia lease a delay rental of $1 per acre and that "plaintiffs are entitled to $8,610.33 thereof * * which should be taken into account in the order settling the account, as filed and directing the entry of judgment accordingly." This, the defendant points out is an obvious error on his part, for these figures represent the *total* annual delay rental out of which plaintiffs are to receive but their share for the year 1956, viz.: $115.01 under the Stanolind lease and $1,435.24 under the Magnolia —a total of $1,550.25 and not $15,854.55 as claimed by plaintiffs. That this is the total received by defendant is evidenced by the two checks deposited by the lessees to his account (Exs. 11 and 12) and from the schedule (Ex. 8) and the account and supporting affidavit filed by defendant showing total amounts received over a period of years under these leases and plaintiffs' pro rata share. Plaintiffs do not dispute the accuracy of any of these computations for the two prior years when their share was the same as in 1956; they do not urge that there has been any change in the terms of the lease, as a matter of fact, they give no reason for stating that they are suddenly entitled to so much greater an amount—other than to quote defendant's error. Moreover in reaching the figure due them under the account for all past years, payment of which they claim under their third objection, they rely on these very computations. The ground of their third objection is that although there is no dispute as to the figures shown, the trustee should not credit him-

self with checks delivered to plaintiffs on account of their share of rentals and bonuses since these checks are in the hands of the Court and they have not received the proceeds. Clearly, they are entitled to be paid these amounts and defendant acknowledges his indebtedness in this regard.

I find it hard to believe that these objections so patently without merit were taken with a purpose other than to harass and annoy the defendant. They are overruled. The account is settled, approved and confirmed as amended to include the additional sum of $1,550.25 due plaintiffs and the amount of the checks on deposit in this court and of the lost check, totaling $11098.81, and judgment is directed to be entered in favor of plaintiffs for this amount.

This brings me to a consideration of the claims pleaded in the supplemental and proposed amended complaint. Out of a welter of confused and repetitious allegations one claim emerges and that is that plaintiffs seek to recover interest, counsel fees and expenses and unspecified damages from defendant.

Count IV is to the effect that the judgment of the Texas court establishes a breach of trust by defendant in wrongfully withholding plaintiffs' property from them, for which defendant should be held to pay "such moneys as may appear to be due with legal interest" and "special damages and exemplary and punitive damages," plus fees and expenses incurred by plaintiffs in defending and cross-claiming in the Texas suit. Count V pleads a conspiracy between defendant and unknown persons to breach the trust (in an unspecified manner) and prays that the court "grant discovery of all such other persons and will enter judgment for all damage to plaintiffs caused by the conspiracy." Count VI alleges that the prosecution of the Texas suit was done maliciously and without probable cause and that as a result plaintiffs were deprived of the use of their land and that for this defendant should be directed to reimburse plaintiffs for their attorney's fees and

expenses; here, no damages are alleged. Count VII pleads a slander and clouding of title on plaintiffs' land by the filing of the Texas suit and by the filing of the leases which should have provided for payment of the ⅟₁₆ royalty on 1,550.2 acres directly to plaintiffs as lessors instead of to defendant as lessor. All this it is pleaded has resulted in a deprivation of the enjoyment of their land by plaintiffs for which defendant should pay exemplary, compensatory and special damages in no specified amount.

It is admitted by defendant that now that the Court of Appeals in Texas has adjudicated plaintiffs' rights to this tract an assignment of their royalty interest under the leases should be made by him, and that he is perfectly willing to do so in compliance with a direction from the court to this effect. It is also admitted by plaintiffs that no royalties have become payable on this particular tract and that there is nothing for which defendant should account.

It is elementary that under American jurisprudence counsel fees are not recoverable except by contract, statute or in equity where a fund has been created—and even in those instances it is the estate or fund which bears the cost—not the adversary. None of these conditions are here present.

It is obvious that all four counts are premised on the assumption that defendant as trustee of an express trust in resisting plaintiffs' demands and filing suit unjustifiably withheld property clearly belonging to the beneficiaries of the trust for which he should be surcharged to the extent of paying interest on the property and indemnifying plaintiffs for the expenses of litigation.

Whatever might be the liability of a malfeasing trustee who has wrongfully withheld (Crutcher v. Joyce, 10 Cir., 146 F.2d 518, relied on by plaintiffs; Cf. Matter of Bloomingdale's Estate, 169 Misc. 968, 9 N.Y.S.2d 333, affirmed 258 App.Div. 881, 17 N.Y.S.2d 395; Surrogate's Court Act, § 231) we have no parallel situation here. True, it is that

·the Court of Texas held defendant to be a "constructive trustee" of the lands quitclaimed by plaintiffs, but that can be regarded as further proof that the deed of 1945 did not create an express trust. In denying plaintiffs' motion for summary judgment, I held that the instrument "did not establish a trust so unambiguously as to preclude parol evidence to elucidate the intent of the parties and give the instrument its proper construction." This was borne out by the views expressed by the Texas trial and appellate courts respectively. A fundamental issue and one bitterly contested here and there was title to and ownership of lands; this certainly does not paint a picture of an avaricious trustee being forced to disgorge illegally retained property at the expense of his cestui que trust.

Nor can plaintiffs fare any better under the allegations of Count VI. The two absolutely essential requirements to the maintenance of a suit for malicious prosecution are not only not alleged, they are non-existent. Not only was defendant (plaintiff in that suit) victorious in the trial court and plaintiffs defeated in their cross-claim negating the lack of probable cause aspect, but there was no interference with plaintiffs' property resulting in actionable damage. Hauser v. Bartow, 273 N.Y. 370, 7 N.E.2d 268; Luckett v. Cohen, D.C.S.D.N.Y., 169 F. Supp. 808; Willard v. Holmes, Booth & Haydens, 142 N.Y. 492, 37 N.E. 480; Schulman v. Modern Industrial Bank, 266 App.Div. 833, 43 N.Y.S.2d 509; Serxner v. Elgart, 196 Misc. 1053, 94 N.Y.S.2d 731. Even if I were to read the allegations of Count VII as an awkward attempt to plead interference with plaintiffs' property (and I very much doubt that this is the interference contemplated by the cases), by plaintiffs' own admission they have suffered no damage from such interference. At most it would be *injuria absque damnum.* Moreover as a claim for slander of title standing alone Count VII cannot stand, for it is essential to the maintenance of ·such a suit that special damage be al-

leged and proved. Stuart v. Anti-Defamation League, Sup., 127 N.Y.S.2d 362; Joseph v. Siegel, Sup., 103 N.Y.S.2d 557; Frawley Chemical Corp. v. A. P. Larson Co., 274 App.Div. 643, 86 N.Y.S. 2d 710.

■ Assuming that the institution of the suit by defendant in Texas was groundless, malicious, false, fraudulent, even a breach of fiduciary duty, I know of no case in New York jurisprudence which permits the recovery, with nothing more, of costs and expenses in an independent action as damages. As recently as July, 1956 the Court of Appeals of New York in Doyle v. Allstate Ins. Co., 1 N.Y.2d 439, 154 N.Y.S.2d 10, 14, 136 N.E.2d 484, refused to permit the plaintiff to recover legal fees and expenses incurred in litigation as damages either general or special even though they were recognized "a loss in a sense resulting from the wrongful act of the defendant". It restated the general rule that taxable costs are considered adequate recompense and that even these are not to be included in damages but are to be recovered in the taxation and consequently no evidence as to such costs would be relevant on trial (1 N.Y.2d at page 444, 154 N.Y.S.2d at page 14, 136 N.E.2d at page 487). The facts in that case could not have been more favorable to permitting plaintiff to recover his costs and fees, and while he was permitted to recover expenses incurred in defense of an action which by contract his insurer should have defended, he was not permitted to recover the expenses incurred in the present suit. The Court stated that it had found no authority permitting such recovery, and reaffirmed the rule that time, effort and money expended in litigation are the consequences of every suit. J. J. Theatres, Inc. v. V. R. O. K. Co., Sup., 96 N.Y.S. 2d 271.

■■ Finally, I come to the question of interest on the amounts due plaintiffs under the account and the judgment. Obviously what I have said above precluded recovery of interest from the trustee on the theory of wrongful with-

holding. Even an express trustee—and defendant was not one—who in good faith resists the demands of his cestui although ultimately he may have to pay the demand will not be surcharged by way of having to add interest out of his pocket to his account. Matter of Barnes, 140 N.Y. 468, 35 N.E. 653; Restatement Law of Trusts, Sec. 207, Com. C, p. 568. The principle behind a trustee's liability for interest is to charge him with the profits made by him through the unauthorized use of trust funds, or with the profits that he should have made for the cestui's benefit had he employed the funds in obedience to directions in the trust instrument. See Bogert on Trusts, Sec. 157, 3d Ed. It is not so much a matter of punishing the trustee for breach of duty as it is of compensating the beneficiary for the loss in the value of his property, where the fund has not been put to use, or for the increase in its value where the trustee has made a profit out of it. In re Ayvazian's Estate, 153 Misc. 467, 275 N. Y.S. 123, upon which plaintiffs place great stress serves but to point up the difference between reasonable doubt and such gross delinquency as to amount to misconduct. There trustees who had diverted trust funds to the payment of personal obligations and held a legacy for thirteen years without making any effort to distribute were held accountable for interest. It is significant that even in that situation the costs and disbursements of the proceedings were charged to the estate and not to the trustees personally.

█ Here, defendant was diligent in paying over to plaintiffs those sums as to which there was no dispute, expressly stating that receipt by plaintiffs was to be without prejudice to the additional sums they were contending for under the deed. (Ex. 9) That plaintiffs received no benefit from these checks was their own fault, for they could have cashed them. When in the Texas litigation plaintiffs counterclaimed for a larger amount, defendant was justified in withholding payment, and immediately following the filing of the mandate of the Court of Appeals of Texas he sent plaintiffs a further check in payment of their share as finally adjudicated. The bonus payments and delay rental due under both leases were in accordance with the terms thereof deposited in a special checking account where they earned no interest. The delay from the time defendant filed his account last May to the entry of judgment and the paying over to plaintiffs of the amounts due under them the account and the judgment has been occasioned by plaintiffs' frivolous objections and their numerous motions filed as late as December, 1956. For this defendant should not be held liable.

█ Count V, I read as an attempt to plead a conspiracy between defendant and others to institute the suit complained of in the other counts. I have held that that suit was justified, but even were it not I know of no theory of law which permits an action otherwise not maintainable, to be brought where conspiracy is alleged. Luckett v. Cohen, supra; Munson Line v. Green, D.C., 6 F.R.D. 14, appeal dismissed 2 Cir., 165 F.2d 321; J. J. Theatres, Inc. v. V. R. O. K. Co., supra.

I might add that the deed of March 19, 1945, provides that there is to be no personal liability on the said trustee except for a due accounting and a division of the moneys actually received by him on that account.

█ Defendant's motion is granted; the supplemental complaint and the proposed amendment raise no factual issues; the pleadings as a matter of law fail to state a claim upon which relief can be granted; the objections which plaintiffs incorporate in the pleadings are sham. Marks Music Corp. v. Continental Record Co., 2 Cir., 1955, 222 F. 2d 488; Irving Trust Co. v. United States, 2 Cir., 1955, 221 F.2d 303; Furgiele v. Disabled American Veterans Service Foundation, D.C., 116 F.Supp. 375, affirmed 2 Cir., 1953, 207 F.2d 957; River Plate and Brazil Conferences v.

Pressed Steel Car Co., 2 Cir., 1955, 227 F.2d 60. Supplemental complaint is dismissed and leave to file the amendment is denied.

It is time this litigation came to an end. Submit judgment on notice giving effect to the account as amended and settled.