Edwin K. ATWOOD, Alice B. Atwood, Ruth P. Fisher and Thomas H. Fisher, Plaintiffs-Appellants,

v.

Gilbert KERLIN, Defendant-Appellee.

No. 19, Docket 24899.

United States Court of Appeals Second Circuit.

Argued Dec. 3, 1958.

Decided Jan. 28, 1959.

On Rehearing March 16, 1959.

Bokat & Bokat, New York City, for appellants.

Mac Ilburne Van Voorhies, New York City, for appellee.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

SWAN, Circuit Judge.

The judgment from which plaintiffs have appealed was entered, on defendant's motion, in a suit brought by plaintiffs on January 18, 1951, to establish the existence of an express trust under a quit claim deed from plaintiffs to defendant, dated March 19, 1945, describing land on Padre Island, Texas, to require defendant to account thereunder, to terminate the trust, and for other alternative relief. Federal jurisdiction rests on diversity of citizenship. 28 U.S. C.A. §§ 1332, 1391. Four days after the present suit was commenced, defendant Kerlin in Texas brought action against the present appellants and others to obtain an adjudication of the respective rights of the parties as to the land.[1] That suit was not finally terminated until the mandate of the Court of Civil Appeals was filed on December 12, 1955, opinion reported in Fisher v. Kerlin, 279 S.W.2d 637. In the meantime the present suit lay dormant.

Almost immediately after final decision in the Texas case, plaintiffs moved in the present suit for a summary judgment requiring defendant to account. By order of April 2, 1956 Judge Ryan directed defendant to file his account and directed plaintiffs to file their objections thereto, if any. This order was complied with, and on September 12, 1956 defendant moved for an order approving his account and dismissing, for failure to state a cause of action, plaintiffs' supplemental complaint filed subsequent to defendant's account. This motion, with numerous supporting and opposing affidavits, was fully considered by Judge Ryan, and was granted in a carefully reasoned opinion, dated May 13, 1957, which appears in D.C., 169 F.Supp. 135. The judgment on appeal was entered on July 29, 1957. Without reciting in detail all the terms of the judgment it will suffice to note that it approved defendant's account, awarded plaintiffs the indebtedness therein shown, $16,656.07, dismissed plaintiffs' supplemental complaint, and denied leave to file a proposed amendment thereto. No testimony was taken, the case being decided on the pleadings, voluminous affidavits and exhibits.[2]

It is conceded by both parties that all issues determined by the Texas action are *res judicata* in the present suit. Much of the voluminous record is concerned with background history of title litigation in Texas. A brief summary will suffice. In 1941 Kerlin filed a tres-

[1]. Plaintiffs' efforts to enjoin prosecution of the Texas suit failed both before Judge Ryan and in this court, and need not be further adverted to.

[2]. Appellants' Appendix, which purports to comply with Rule 15(b) of this court, 28 U.S.C.A., and contains 287 printed pages, is a very inadequate presentation of the portions of the record essential to disposition of the issues raised by the appeal. The appellee has filed an Appendix of 246 printed pages.

pass to try title action in Cameron County, Texas, against the King Ranch, not a party to the present suit, and the present plaintiffs, for 6,000 acres of land referred to herein as the King tract and located at the southern end of Padre Island. During the pendency of that action, the United States Government commenced condemnation proceedings and took title to the King tract and also to a larger tract referred to herein as the Jones tract and located immediately to the north of the King tract. During 1941 the King Ranch and defendant settled the trespass action, and in 1945, plaintiffs and defendant agreed upon a similar settlement of their controversy, pursuant to which the quit claim deed of March 19, 1945 was delivered. Under the terms of the deed defendant Kerlin assumed the task of prosecuting plaintiffs' claims for an award in the pending Government condemnation proceeding. In 1950, he worked out an arrangement whereby the Government paid a small sum for the use of the land while the condemnation proceeding was pending and revested title to the King tract in Kerlin and title to the Jones tract in Kerlin and Jones jointly.

Immediately after the conclusion of that action, plaintiffs instituted the present suit in the District Court, and four days later Kerlin filed suit in Texas to obtain an adjudication of the rights of the parties under the 1945 quit claim deed. As the opinion in Fisher v. Kerlin, 279 S.W.2d 637 makes clear, the Texas suit construed the quit claim deed, determined Kerlin's duties thereunder and the rights of the parties in the lands therein described and in money received by Kerlin from dealing with said lands. It decided that the present plaintiffs (referred to in the opinion as the Atwoods) had title to an undivided 1,000 acres out of the south 2,000 acres of the 6,000 acre King tract, and to an undivided 550.1 acres out of the 3,300.11 acre tract north of the 6,000 acre King tract. It also rendered judgment that the Atwoods recover a one-sixteenth royalty and one half of

the bonuses and rentals paid to Kerlin on the south 2,000 acres of the 6,000 acre King tract and on the 550.1 acres of the acreage lying north of the King tract. Kerlin was left under the duty to account for money received from the United States under its condemnation proceedings, and from the lessees under two oil and gas leases which he had made, one with Stanolind Oil & Gas Co., the other with Magnolia Petroleum Co. His account filed on May 1, 1956, was held by Judge Ryan to be a proper accounting for the money so received.

The appellants' brief presents their contentions under seven headings. Point I argues that the quit claim deed of March 19, 1945 created "An Express Inter Vivos Trust" in their favor. This argument is made notwithstanding the statement in the Texas opinion, 279 S.W. 2d 637, at page 642: "We rest our decision upon a constructive trust rather than an express trust." However, an affidavit submitted in opposition to defendant's motion to approve his account, states that in view of the Texas judgment "the sole and only questions undetermined under the Complaint and Supplemental Complaint are (a) the settlement of the account of the Defendant Gilbert Kerlin, as trustee (whether as express or constructive trustee is irrelevant), and (b) a determination of Kerlin's liability, if any, under Plaintiffs' Supplemental Complaint."[3]

In Point II appellants argue their right to "a day in court." Their brief asserts (page 28) that the primary question involved on their appeal is whether entering a summary judgment deprived them "of their right to their 'day in court' by a trial upon the merits of the Trustee's account, as well as the other issues raised in Plaintiffs' pleadings." They rely strongly upon the principle enunciated in Subin v. Goldsmith, 2 Cir., 224 F.2d 753, 758, certiorari denied 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779, and similar cases, holding that where controverted facts are peculiarly within

3. Appellants' App. 216a.

one party's knowledge and a question of such party's good faith is involved, a summary judgment in his favor without trial is improper. This principle is completely inapplicable to the case at bar. In disposing of the objections to the account, Judge Ryan held that no hearing was necessary since the objections could be determined by reference to the documents and exhibits submitted, none of which was in dispute.[4] Despite appellants' assertion that "every crucial fact in the respective affidavits * * * is directly controverted and contradicted" nowhere do they state what those facts are nor what specific issue requires a trial. So far as we can ascertain from a study of the record there are no "controverted facts," merely disagreements as to the legal consequences of admitted facts, or disputes as to the legally correct interpretation of documents and exhibits. Nor do we find any evidence whatever of bad faith on the part of defendant, despite plaintiffs' vociferous charges of breaches of trust, malicious prosecution, conspiracy, and slander of title. Indeed, if either party's good faith is to be doubted, there seems more reason to doubt the plaintiffs'.[5]

Point III claims that defendant committed a breach of trust by failing to include in the Stanolind and Magnolia leases a provision requiring payment directly to them of the royalties to which the Texas court later found them to be entitled. However, even on the assumption that failure to provide for direct payment was a violation of defendant's duty as a fiduciary, appellants suffered no damage from such failure, because no royalties were ever realized and the leases have ended.

Point IV is predicated on appellants' contention that under the Stanolind lease defendant was obligated to collect one dollar per acre delay rental in 1953 and failed to do so. Judge Ryan's opinion construed the lease, correctly we think, as not requiring the lessee to make such payment. We have nothing to add to his discussion.

In Point V appellants claim a breach of trust by defendant which entitles them not only to the money received for their benefit but also to interest thereon. Prior to the date of plaintiffs' 1945 quit claim deed to Kerlin, he asserts that he had acquired title to certain lands on Padre Island for himself and other interested persons for whom he acted as trustee, but not on behalf of any of the appellants.[6] They do not deny this assertion. Nevertheless they make the extraordinary claim that defendant must account for "the entire corpus of the trust estate," i. e. the total amount of money held by him as a trustee, asserted by them to be more than $170,000 although only part is held as trustee for them and the rest as trustee for a separate and independent group of beneficiaries, and that thereby they become entitled to obtain out of the total of both trusts reimbursements for outlays and attorney's fees incurred by them in the Texas litigation.[7] We fail to understand on what theory plaintiffs can demand that defendant account to them for that portion of cash received which he holds in trust for others and in which the ap-

---

4. Appellee's brief states that the documentary evidence upon which Judge Ryan acted consisted of: the record in the present action; copy of the judgment in the Government's condemnation suit; opinion of the Texas Court of Civil Appeals in Fisher v. Kerlin, 279 S.W.2d 637; copies of the Texas judgment fixing extent of appellants' rights under their quit claim deed to appellee; copies of two written oil and gas leases filed of record in Texas; and other undisputed documents set out in appellee's affidavits in support of the motion.

Appellants' reply brief does not dispute this.

5. Judge Ryan characterized their objections to the account as follows: "I find it hard to believe that these objections so patently without merit were taken with a purpose other than to harrass and annoy the defendant."

6. Appellee's App. 54a.

7. Appellants' App. 151a(28).

pellants have no interest. No authority supporting such theory has been called to our attention. Appellants' brief asserts (page 14) that without such disclosure it is impossible for the court or plaintiffs to know if the trustee's account is correct. This is not so. Defendant has fully disclosed all money received from the Texas lands. The way in which plaintiffs' share in the total cash received by defendant was determined in his account, namely apportionment on the basis of total acreage, is perfectly understandable and is in accordance with the Texas Court's judgment.

Under Point V the appellants' brief, which we find highly confusing, argues that defendant committed additional breaches of trust which justified allowing them interest. They argue (page 37) that defendant's account filed on May 1, 1956 admitted receipt of $5,552.09 under the Magnolia lease and that defendant was not diligent in paying it to them but actually "concealed" its existence while "attempting by litigation to despoil plaintiffs of their concealed property." This claim is little short of ridiculous in view of the fact that defendant was conducting the Texas litigation in good faith and won in the trial court.

Appellants also claim that defendant should also pay interest because checks he sent them were improperly drawn. But they were drawn in accordance with appellant Fisher's instructions and defendant agreed in writing that they might be cashed without prejudice to appellants' contentions. Finally appellants claim interest because defendant procured an order from Judge Ryan that the checks previously delivered but never cashed, be impounded with the Clerk of the District Court. In view of the circumstances this order seems well justified and certainly affords no basis for awarding appellants interest.

Point VI presents the contention that defendant committed a breach of trust in prosecuting the Texas litigation and entitled them to damages for malicious prosecution. In view of defendant's success in this litigation, the con-

tention is wholly lacking in merit. It is adequately discussed in Judge Ryan's opinion.

Appellants' Point VII objects to the quit claim deed which the judgment below directed defendant to execute and record. The primary objection is that Kerlin's deed reserves to him and his legal representatives the power to make mineral leases in the future without the joinder or consent of appellants. It is conceded that their 1945 quit claim deed gave Kerlin and his heirs or assigns such power, but they contend that the judgment in the Texas action terminated it, and that the deed required by the judgment below is erroneous in restoring it to Kerlin. They have misconstrued the Texas judgment. The opinion expressly states, 279 S.W.2d 637, 647: "The rights of the parties are controlled by the settlement agreement," i. e. by the 1945 quit claim deed. Other highly technical verbal criticisms of Kerlin's deed also appear to have no merit. But in as much as appellee's brief states that he is willing to execute a new deed following the wording suggested by appellants if the differences are of any substance, our affirmance will be without prejudice to an application to Judge Ryan to order execution of a new deed by Kerlin if in his discretion it seems desirable.

Judgment affirmed.

On Petition for Rehearing.

PER CURIAM.

The appellants contend that our opinion misinterpreted the judgment of the Texas Court of Civil Appeals, and that this "might have the illegal effect of depriving them of one half of their 1100.5 mineral acres which were actually adjudged to them after five years of litigation in Texas." We think their fears are unjustified. Our opinion makes obvious that we accept the Texas Court judgment as having determined the rights of the parties. However, we may have been too elliptical in attempting to summarize what the Texas Court held at page 647 of 279 S.W.2d, as amended by its memorandum opinion filed on De-

cember 7, 1955 (Appellee's Appendix, pp. 39a–40a). Accordingly we will substitute for the sentence to which the appellants object, the following: It also rendered judgment that the Atwoods recover a one-sixteenth royalty and one-half of the bonuses and rentals paid on the south 2,000 acres of the 6,000 acre King tract; and one-half of the bonuses and rentals paid on 1,100.5 acres out of the 6,600.22 acre tract lying north of said King 6,000 acre tract.