Edward Mike DAVIS, Appellant,

v.

Bobby MANZIEL et al., Appellees.

Jack DEMPSEY, Appellant,

v.

Edward Mike DAVIS, Appellee.

Nos. 7214, 7215.

Court of Civil Appeals of Texas.

Texarkana.

Aug. 2, 1960.

Rehearing Denied Aug. 30, 1960.

No. 7214:

Jones, Brian & Jones, Marshall, L. Hamilton Lowe, Austin, for appellant.

Ramey, Brelsford, Hull & Flock, Gordon Brelsford, Tyler, Strasburger, Price, Kelton, Miller & Martin, Henry W. Strasburger, Dallas, Fred Erisman, Longview, Chilcote & Clark, Tyler, for appellees.

No. 7215:

Cornelius & Cornelius, Jefferson, for appellant.

Jones, Brian & Jones, C. A. Brian, Marshall, for appellee.

DAVIS, Justice.

Humble Oil and Refining Company owned a lease upon 1,261.15 acres of land in Marion County which it acquired from the Whelan heirs. The lease was dated December 10, 1945. On December 7, 1955, Humble executed a farm-out agreement to convey the lease to Bobby Manziel, less an override. On December 15, 1955 Manziel made a trade with Edward Mike Davis to convey to him an interest in a well, or the lease. A producing well was found on the lease by Manziel in January or the early part of February, 1956. The actual assignment of the lease was not made by Humble until February 20, 1956. On February 22, 1956, Manziel conveyed to Davis an assignment to a 1/16th of 7/8th interest, less the reservation by Humble, in and to 40 acres of the lease around the well that Manziel had already drilled. Davis accepted the assignment and carried it to Colorado. After he arrived in Colorado with the assignment, Davis decided he had not gotten what he bought and through correspondence he made the complaint that resulted in this suit.

Prior to this time, Davis had become acquainted with Jack Dempsey in New York City. It was through Jack Dempsey that Davis met Manziel. Dempsey contended that he and Davis made an agreement whereby Davis would buy an interest in the property of Manziel and would in turn convey to him ½ of the interest.

Plaintiff Davis sued Manziel in the District Court of Marion County. After the suit was filed and before the trial, Bobby Manziel died. Plaintiff Davis amended his petition and sued the heirs of Manziel, defendants Dorothy Nolan Manziel, individually and as administratrix of the estate of Bobby Manziel, Bobby Joe Manziel, Edward Manziel, Norman Paul Manziel, Merigale Manziel, Vicki Lynn Manziel, Dorothy Suzanne Manziel, and Gloria Manziel Saleh and husband, Philip Saleh. The honorable Ted Chilcote, an attorney in the case, was appointed as Guardian ad litem to represent the minor children of Bobby and Dorothy Manziel.

Immediately after the above suit was filed, Dempsey sued Davis, seeking to impress a trust upon one-half of any interest that Davis might recover. By order of the trial court, the cases were consolidated and tried together. The parties will be referred to as in the trial court.

Plaintiff Davis sued the defendants Manziels, seeking to recover an undivided 1/16th of 7/8th interest in the leasehold or working interest, less the reservation made by Humble, in and to the total of 1261.15 acres of land. In his petition plaintiff Davis alleged two counts for recovery: (1) a count in

trespass to try title; and (2) a count seeking to impress a resulting or constructive trust upon the leasehold estate.

The two cases were tried to a jury. In response to the special issues submitted, the jury returned a verdict in favor of plaintiff Davis and cross-plaintiff Dempsey. Prior to the time the cause was submitted to the jury, defendants Manziels made a motion for an instructed verdict, which was overruled. After the jury verdict had been returned, defendants Manziels and plaintiff Davis filed motions for judgments notwithstanding the verdict of the jury. The trial court after due consideration granted such motions except the admitted interest in the 40 acres around one well, which the court gave to Davis. It was from this judgment that plaintiff Davis and cross-plaintiff Dempsey have appealed. Plaintiff Davis brings forward four points of error.

Davis complains of the errors of the trial court in awarding to him an interest in 40 acres; in not rendering judgment on the verdict of the jury; in holding there was no evidence to support the jury verdict; and, in holding that the agreement between Davis and Manziel was unenforceable because of Sec. 4. of Art. 3995, the Statute of Frauds.

The trial court had overruled the exceptions of the defendants Manziels to plaintiff Davis's petition. The trial court only submitted four issues: (1) whether or not there was an oral agreement between plaintiff Davis and the deceased Bobby Manziel; (2) whether or not cross-defendant Davis agreed to purchase the interest in the lease from Bobby Manziel as a result of the efforts of cross-plaintiff Dempsey; (3) whether or not cross-defendant Davis orally agreed to transfer to cross-plaintiff Dempsey one-half of any amount that cross-defendant Davis bought from Bobby Manziel; and (4) whether or not cross-defendant Davis after purchasing the mineral interest from Bobby Manziel repudiated the agreement to convey one-half of the interest therein to cross-plaintiff Dempsey.

There was much evidence offered in the trial of the case, including the cancelled check from plaintiff Davis for $6,250 that was given to Manziel. The record shows that Manziel was an independent oil operator in his lifetime; that Manziel sold to plaintiff Davis an interest in one well. We say this in view of the fact that we must view the evidence in the light most favorable to the jury verdict in the event such evidence was sufficient to raise a cause of action in favor of plaintiff Davis. A brother of plaintiff Davis testified in the case, and from his testimony one can readily see that plaintiff Davis only bought an interest in one well. Quoting from the testimony we find the following:

"Q. Well, was there any discussion of any price for that ⅟₁₆th? A. Yes, sir.

"Q. What was that? A. Sixty-two Hundred and Fifty Dollars.

"Q. Well, now what was the $6,250.00 to cover? A. The complete cost of drilling and into the tanks on the first well."

And further on we find him testifying as follows in talking about the check:

"Q. You saw him sign it?

"A. I put it on a magazine and handed it to him and he signed it on the magazine on his knee.

"Q. What did he do with the check then, or who finally ended up with it?

"A. Well, he kept hold of it, because he said now here is the check Bobby, now what are you going to give me to show that *I have got an interest in this well,* and Bobby says 'well, I don't have the farm-out from Humble and I can't give you nothing, I don't own it yet, but as soon as I get the instrument to show that I have it and give you guys something always your check is your receipt', so Mike handed me back the check and I put on the check what it was for, * * *." (Italics added.)

We find that the trade from Davis to Manziel was oral and in violation of the Statute of Frauds of Art. 3995, Sec. 4, Vernon's Ann.Tex.Civ.St. Fisher et al. v. Kerlin, Tex.Civ.App., 279 S.W.2d 637, writ refused, n. r. e.; Erwin et al. v. Hays, Tex.Civ.App., 267 S.W.2d 884, writ refused, n. r. e.; Browne v. King et al., 111 Tex. 330, 235 S.W. 522. The points are overruled.

Cross-plaintiff Dempsey brings forward only four points of error.

In view of the pleadings of cross-plaintiff Dempsey and the evidence, there can be no contention that the trade between Dempsey and Davis is in violation of the Texas Trust Act, Art. 7425b–7, V.A.T.C.S. The points are overruled.

The judgment of the trial court is affirmed.